## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LUHRON A. GORMAN**                                    **CIVIL ACTION**

**VERSUS**                                              **NO.  13-6647**

**N. BURL CAIN, WARDEN**                                **SECTION "B"(2)**
**LA. STATE PRISON**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings,
including an evidentiary hearing, if necessary, and to submit proposed findings and
recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as
applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the
entire record, I have determined that a federal evidentiary hearing is unnecessary.  See
28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition
for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated
determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when
the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that
was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could
not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the
facts underlying the claim show by clear and convincing evidence that, but for the constitutional error,
no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>STATE COURT PROCEDURAL BACKGROUND</u>

The petitioner, Luhron A. Gorman, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 25, 2010, Gorman and a co-defendant, Michael Collier, were charged by bill of information in Jefferson Parish with one count of armed robbery.[3]  Gorman was charged in a second count as a felon in possession of a weapon. The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at the trial in relevant part as follows:

> On February 20, 2010, Althea Ovella, age 76, left church and drove to her mother's house in the 300 block of Sena Drive in Metairie.  When she arrived at approximately 5:15 p.m., she observed two young men walking across the street. Ms. Ovella opened the garage door with a remote control and went inside of the garage.  As she opened her car door, one of the men she had seen across the street pointed a black handgun at her and demanded her purse.  Ms. Ovella asked the gunman not to take her purse because it contained her babies' pictures.  The gunman asked if she had any money, and Ms. Ovella responded by giving him $60.00.  He allowed her to keep her purse.  The other man, who was standing by the garage door, told her to be quiet and that they were not going to hurt her.
> After taking her money, the gunman said, "Let's go inside." Ms. Ovella begged him not to go inside, explaining that her 97-year-old mother would die if she saw him come inside with a gun.  The gunman asked if she had a gun or if her mother had any money, and Ms. Ovella responded negatively.  The man standing by the garage door said, "Let's go," and he and the gunman left.
> John Carroll, a former detective sergeant with the Jefferson Parish Sheriff's Office (JPSO), investigated the armed robbery and developed two suspects.  He prepared two photographic lineups and showed them to Ms. Ovella, who positively identified defendant as being the man who stood back during the robbery.  A few days later, Ms. Ovella positively identified the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 3 of 6, Bill of Information, 3/25/10 (as amended 10/7/10, 10/20/10).

gunman in another photographic lineup.  Thereafter, defendant was arrested and brought in for questioning.  After being advised of and waiving his rights, defendant admitted committing the armed robbery of Ms. Ovella.

During his investigation, Detective Carroll learned that defendant and his girlfriend were staying at the Travelodge located at 2200 Westbank Expressway in Room 308.  The police obtained the girlfriend's consent to search the room and recovered a fully loaded silver Taurus revolver hidden behind an air conditioning unit.  It was determined that this gun was not the gun used in the robbery of Ms. Ovella.

During defendant's statement, which occurred after the search of the motel room, he admitted that he had placed a gun inside the air conditioning unit.  He also identified Michael Collier as the gunman in the robbery.

At trial, defendant testified that on the day in question, he and Collier tried to commit a burglary in New Orleans, but decided not to do so when they saw children in the house.  They drove away from the scene and eventually made their way to Metairie Road.  They thought the police were pursuing them, so they parked the car near a service road and began walking.  When they saw a garage door open, they ran inside of the garage.  Inside the garage, defendant saw Ms. Ovella, who started to scream.  He told her to be quiet and that they were not going to hurt her.

According to defendant, Collier then pulled out a gun.  Defendant told Collier to put the gun away because the woman was about to have a heart attack.  Defendant claimed he did not leave at that point because he was afraid Collier was going to hurt the woman.  He recalled the woman asking them not to go inside of the house because of her 97-year-old mother.  Afterwards, Collier took money from the woman, and he and defendant left.

Defendant subsequently saw himself on the news, at which time he fled to Monroe.  He was eventually apprehended by U.S. Marshals and brought back to Jefferson Parish.  Defendant claimed his initial intent was not to rob Ms. Ovella, and that he only ran inside the garage to avoid the police.  Defendant admitted that he had a gun on him during the incident, but stated he did not pull it out.

On rebuttal, Ms. Ovella testified that defendant's testimony was wrong, in that defendant and Collier were not running prior to the incident, there were no police cars around, and the gunman did not pull the gun out after he came into the garage as he already had it out.  Ms. Ovella also stated that the only words defendant said were, "Let's go," and that he did not tell Collier anything else.

Defendant and the State stipulated that defendant had previous convictions for possession of cocaine and possession of cocaine with intent to

distribute and that his convictions occurred within the ten-year period required
by La. R.S. 14:95.1.

State v. Gorman, 88 So.3d 590, 593-95 (La. App. 5th Cir. 2012); State Record Volume
4 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-491, pages 3-5, February
14, 2012.

The state trial court granted co-defendant Collier's motion to sever the matter for
trial.[4]  Gorman was separately tried before a jury on October 7, 2010, and was found
guilty as charged on both counts.[5]  The court denied Gorman's motion for a new trial on
October 25, 2010, and after waiver of legal delays sentenced him to serve consecutive
sentences of 75 years in prison at hard labor on count one and 15 years in prison at hard
labor on count two.[6]

That same day, the State also filed a multiple offender bill as to count one to which
Gorman initially entered a plea of not guilty.[7]  At a hearing held on January 12, 2011,

---

[4]St. Rec. Vol. 3 of 6, Motion Hearing Minutes, 9/22/10; Hearing Transcript, pp. 5-6, 9/22/10.
The record does not reflect the disposition of Collier's charge, although Gorman alleges that he
eventually entered a plea of guilty.

[5]St. Rec. Vol. 4 of 6, Trial Minutes, 10/7/10; Trial Transcript, 10/7/10; Jury Verdict (count one),
10/7/10; Jury Verdict (count two), 10/7/10; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 10/7/10.

[6]St. Rec. Vol. 3 of 6, Trial Court Order, 10/25/10; Motion for New Trial, 10/20/10; Sentencing
Minutes, 10/25/10.

[7]St. Rec. Vol. 3 of 6, Multiple Bill, 10/25/10; Sentencing Minutes, 10/25/10; St. Rec. Vol. 4 of
6, Sentencing Transcript, 10/25/10.

4

Gorman withdrew that plea and entered a guilty plea to the multiple bill.[8]  The court vacated the original sentence on count one and re-sentenced Gorman to serve 75 years in prison at hard labor as a multiple offender to run consecutively to the sentence imposed on count two.

On direct appeal to the Louisiana Fifth Circuit, Gorman's appointed counsel argued that the state trial court erred by limiting defense counsel's cross-examination of Detective John Carroll regarding his dismissal from the sheriff's office and the drug charges pending against him.[9]  Gorman filed a pro se supplemental brief in which he argued that he was also denied the right to conflict-free counsel.[10]

The Louisiana Fifth Circuit affirmed the conviction on February 14, 2012, finding no merit in either claim.[11]  Gorman's conviction and sentence became final 30 days later, on March 15, 2012, when he did not seek rehearing or review in the Louisiana Supreme Court.  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

---

[8]St. Rec. Vol. 3 of 6, Sentencing Minutes, 1/12/11; Plea of Guilty & Waiver of Rights as a Multiple Offender, 1/12/11.

[9]St. Rec. Vol. 4 of 6, Appeal Brief, 11-KA-0491, 5/24/11.

[10]St. Rec. Vol. 4 of 6, Pro Se Supplemental Brief, 11-KA-0491, 7/15/11.

[11]Gorman, 88 So.3d at 590; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 11-KA-491, 2/14/12.

On November 28, 2012, Gorman submitted to the state trial court an application for post-conviction relief asserting two grounds of ineffective assistance of counsel.[12] After the State responded, the state trial court denied Gorman's application on March 14, 2013, finding the claims meritless under the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and related state case law.[13]

The Louisiana Fifth Circuit denied Gorman's writ application, agreeing that Gorman's representation satisfied the <u>Strickland</u> standards.[14]  The Louisiana Supreme Court denied Gorman's related application without stated reasons on November 1, 2013.[15]

## II.   <u>FEDERAL HABEAS PETITION</u>

On December 20, 2013, the clerk of this court filed Gorman's petition for federal habeas corpus relief in which he asserts that he received ineffective assistance of counsel

---

[12]St. Rec. Vol. 1 of 6, Application for Post-Conviction Relief, 12/6/12 (dated 11/28/12); St. Rec. Vol. 2 of 6, Memorandum in Support, 12/6/12 (dated 11/28/12).

[13]St. Rec. Vol. 1 of 6, Trial Court Order, 3/14/13; State's Response, 2/6/13.

[14]St. Rec. Vol. 5 of 6, 5th Cir. Order, 13-KH-328, 5/1/13; 5th Cir. Writ Application, 4/17/13 (postmarked 4/15/13).

[15]<u>State ex rel. Gorman v. State</u>, 125 So.3d 424 (La. 2013); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2013-KH-1238, 11/1/13; La. S. Ct. Writ Application, 13-KH-1238, 5/30/13 (dated 5/20/13).

when his counsel failed to object to incomplete supplemental jury charges and investigate or interview crucial witnesses.[16]

In its response in opposition to Gorman's petition, the State concedes the timely filing of the petition and exhaustion of state court remedies.[17]  The State argues that the denial of relief on Gorman's claims was not contrary to or an unreasonable application of Strickland.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Gorman's petition, which, for reasons discussed below, is deemed filed in this court on December 2, 2013.[19]

---

[16]Rec. Doc. No. 1, pp. 20, 23.

[17]Rec. Doc. No. 8.

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[19]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA,

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that the petition was timely filed and that his claims are exhausted and not in procedural default.

IV.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also

---

submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Gorman's petition was filed by the clerk of this court on December 20, 2013, when pauper status was granted. Although Gorman's signature on the petition is dated November 27, 2013, the pleadings were e-mailed by prison officials to the court on December 2, 2013. Rec. Doc. No. 1, p. 6. The record also reflects that the pleadings were received from Gorman by prison officials on December 2, 2013. Id.

codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington v. Richter</u>, __ U.S. __, 131 S. Ct. 770, 787 (2011), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

      "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 1 AND 2)

Gorman argues that his trial counsel erred in failing to object to the state trial court's response to the jury's request for definitions during deliberations.  He also contends that his counsel did not adequately investigate in preparing for trial when she did not interview the victim and the co-defendant to determine if their testimony could be used to support his defense.

On post-conviction review, the state trial court found these claims conclusory and meritless under the Strickland standards and related state law. The Louisiana Fifth Circuit agreed with that decision, also citing Strickland, and the Louisiana Supreme Court denied relief without further comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 688, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Id., 466

11

U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. The Harrington

12

Court went on to recognize the high level of deference owed to a state court's findings

under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is doubly so. The
> Strickland standard is a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against the danger of equating
> unreasonableness under Strickland with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable. The question is whether there is any reasonable argument that
> counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly

deferential." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting

Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption"

that counsel's strategy and defense tactics fall "within the wide range of reasonable

professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586,

591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d

303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance,

a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial. Id., 466 U.S. at 689;

13

Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.      FAILURE TO OBJECT TO READING OF PARTIAL JURY CHARGE

Gorman argues that his trial counsel erred in failing to object to the state trial court's reading of part of the original jury instructions in response to the jury's request during deliberations for definitions.  The state trial court denied relief on this issue on post-conviction review under Strickland.

On post-conviction review, the state trial court found that the jury was properly instructed by the original charges and the court properly answered the jury's question, leaving no reason for counsel to object.  The court also found that Gorman had not shown that prejudice resulted or that the verdict would have been different if the "attempt" definitions had also been read.  This was the last reasoned opinion on the issue.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

14

The state court record reflects that during deliberations the jury sent the state trial judge a "note that said definitions."[20]  The foreperson confirmed for the judge that they wanted to hear "just the elements" of armed robbery, first degree robbery and simple robbery.[21]  The jury did not ask for any additional information at that time, and the court re-read only those portions of the original jury instructions.[22]  The jurors indicated their understanding and asked no further questions at that time.[23]  Counsel did not object to the re-reading, and the court's jury instructions were not directly challenged on appeal or on post-conviction review.  Instead, this issue was raised for the first time as an element of Gorman's post-conviction ineffective assistance of counsel claim.

Gorman complains that the state trial court read only the definitions of armed robbery, first degree robbery and simple robbery, which placed undue emphasis on those crimes.  He suggests that his counsel should have objected and required the court to read the definitions of all responsive verdicts, including attempted armed robbery, attempted first degree robbery and attempted simple robbery.  He argues that the jury might have been misled into believing that these "attempted" responsive verdicts were not viable.

---

[20]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 119, 10/7/10.

[21]Id.

[22]Id., at 119-121; see also, St. Rec. Vol. 3 of 6, Jury Charges, 10/7/10.  The jury later returned with another question requesting to hear the definition of principals again.  Id., at 121.

[23]Id., at 121.

La. Code Crim. P. art. 802 requires a trial court to charge the jury as to the law applicable to the case.  State v. Marlbrough, __ So.3d __, 2014 WL 970163, at *9 (La. App. 5th Cir. Mar. 12, 2014).  In Gorman's case, the jury specifically acknowledged that it wanted to hear again only the definitions of armed robbery, first degree robbery and simple robbery.  The trial judge answered the question by repeating the instructions on those crimes.  Under Louisiana law, "[i]t was unnecessary for the trial judge to re-read all of the responsive verdicts, as the jury did not ask for those."  Id., 2014 WL 970163, at *9.

The United States Supreme Court has also held that the Constitution only requires a judge to respond to a jury's question by referencing a constitutionally adequate jury charge.

> Where a judge "respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry," and the jury asks no followup question, this Court has presumed that the jury fully understood the judge's answer and appropriately applied the jury instructions.

Waddington v. Sarausad, 555 U.S. 179, 196-97 (2009) (quoting Weeks v. Angelone, 528 U.S. 225, 234 (2000); see Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (to establish prejudice from an allegedly improper jury instruction, a petitioner must prove that the charge "by itself so infected the entire trial that the resulting conviction violates due process.")

16

In Gorman's case, the jury originally was read the definitions of all applicable responsive verdicts in accordance with Louisiana law.  The jury confirmed that it wanted to hear only the definitions of the three crimes indicated by the trial court.  The jury did not ask for the definitions of the "attempted" crimes.  It also is apparent from the jury's later question regarding the definition of principals to a crime that they were applying the charges as a whole in considering the overwhelming evidence of Gorman's guilt.  The mere "slight possibility" that the jury misapplied the state trial court's instruction is not enough to establish a due process violation.  Waddington, 555 U.S. at 191 (citing Weeks, 528 U.S. at 236 and Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The state trial court in this case gave the jury constitutionally adequate instruction in response to its specific question.

Under these state and federal standards, Gorman's counsel had no basis to object to the charges read to the jury in response to its question.  Gorman has not identified an error by the state trial court that warranted objection by his counsel.  He therefore has failed to identify any deficiency in counsel's performance or prejudice arising from the failure to enter an objection.  See Clark v. Thaler, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d

17

959, 966 (5th Cir. 1994)); <u>Green v. Johnson</u>, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, <u>Strickland</u>.  Gorman is not entitled to relief on this claim.

B.   <u>INVESTIGATE WITNESSES</u>

Gorman alleges that his counsel failed to investigate the testimony of the victim, Althea Ovella, and the co-defendant, Michael Collier.  He contends that counsel should have interviewed Ovella and Collier before trial to determine if their testimony could be used to support his defense that he and Collier did not intend to rob Ovella and that he tried to stop Collier during the robbery.  The state trial court denied relief on this issue on post-conviction review finding the claim speculative, conclusory and insufficient to establish a basis for relief under <u>Strickland</u>.  This was the last reasoned opinion on the issue.  <u>Ylst</u>, 501 U.S. at 802.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> <u>specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998); <u>Druery v. Thaler</u>, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to

investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Rather, to prevail on such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Gorman does not meet this standard.  He has not identified any exculpatory evidence that would have been obtained from a pretrial interview of either Ovella or Collier.  Ovella's pretrial statements and testimony were clear and consistent that the two men approached her with a gun already drawn and that Gorman made no effort to stop the robbery.  Her memory and resolve remained steadfast even upon cross-examination by Gorman's counsel.  Gorman has not presented any basis for his counsel to have believed that a pretrial interview would have changed Ovella's testimony or in any way supported his defense. He has not demonstrated that there was any exculpatory information to be obtained or that was discoverable through a pretrial interview of Ovella.  He has not established a deficiency in his counsel's performance in this regard.

Gorman also suggests that his counsel should have interviewed the co-defendant Collier before trial to determine if Collier would corroborate Gorman's story. Gorman's claims are again speculative and fail to establish that Collier would have provided exculpatory information or that he would have been willing or allowed by his counsel to speak with Gorman's counsel. According to the limited record references, the charges against Collier were still pending when Gorman was tried on October 7, 2010. In addition, it was Collier who requested and received severance of the trials. The charges against Collier were amended on October 20, 2010, thirteen days after Gorman's jury trial.[24] There was nothing in the record before the state courts or this court to indicate that Collier would have been inclined to testify at the risk of forfeiting his Fifth Amendment rights while his charges were pending or testify favorably to Gorman on any point.

Even now, Gorman has presented no evidence to any court that Collier would have testified favorably or provided exculpatory information if his counsel had interviewed him before trial in 2010. "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" Williams v. Cockrell, 31 F. App'x 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269,

---

[24]St. Rec. Vol. 3 of 6, Bill of Information, 3/25/10 (as amended 10/20/10).

278 (5th Cir. 1997)).  Under the circumstances, counsel's decision not to pursue a pretrial interview with Collier was well within the realm of reasonable attorney conduct and trial strategy.

Gorman has not established any deficiency in his counsel's preparation for trial or that any exculpatory or corroborating evidence could have been discovered through interviews with these two witnesses.  The fact that the jury did not believe Gorman's version of events or his defense does not render counsel's performance constitutionally deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).  The record reflects that trial counsel made a reasonable and vigorous challenge to the State's overwhelming evidence that Gorman was a principal to the armed robbery.

For these reasons, the state courts' denial of relief was not contrary to or an unreasonable application of Strickland.  Gorman is not entitled to relief on this issue.

21

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Gorman's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[25]

New Orleans, Louisiana, this _____27th_____ day of May, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[25]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

22