# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUHRON A. GORMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6647** |
| **BURL CAIN, WARDEN** | **SECTION "B"(2)** |

## ORDER AND REASONS

Before the Court is Luhron A. Gorman's petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus. The State filed an answer and memorandum in opposition to the application. Gorman filed a traversal to the State's answer and the petition was referred to Magistrate Judge Wilkinson. He issued a Report and Recommendation on May 28, 2014, wherein he recommended that the petition be denied and dismissed with prejudice. Gorman filed timely objections to the Magistrate's Report and Recommendation on June 9, 2014.

For the reasons enumerated below, **IT IS ORDERED** that the Magistrate's Report and Recommendation are **ADOPTED,** and the petition for issuance of a writ of habeas corpus be **DENIED and DISMISSED WITH PREJUDICE.**[1] There was no need for an evidentiary hearing, as the record gave sufficient means to evaluate all issues.

Factual and Procedural Background:

The petition arises out of the incarceration of Luhron A. Gorman in Louisiana State Penitentiary in Angola, Louisiana. (Rec.

---

[1] We are grateful for the work on this case by Lauren Michel, a Tulane Law School extern with our Chambers.

Doc. No. 1). The Magistrate's Report and Recommendation reflects that Gorman and co-defendant, Michael Collier, were charged with one count of armed robbery. (Rec. Doc. No. 9). Gorman was charged with a second count as a felon in possession of a firearm.

The record reflects that Gorman participated in the armed robbery of Althea Ovella, age 76, on February 20, 2010.[2] Gorman and Collier approached Ms. Ovella in her garage and Collier pointed a gun at Ms. Ovella and demanded her purse.[3] After various conversations back and forth with Ms. Ovella, Gorman and Collier left with the money from Ms. Ovella's purse.[4]

Collier and Gorman, respectively, were positively identified by Ms. Ovella in separate line-ups as the two men who conducted the robbery.[5] (Rec. Doc. No. 9). During the course of an investigation, Jefferson Parish detective John Carroll learned that Gorman and his girlfriend were staying in a Travelodge.[6] (Rec. Doc. No. 9). A proper legal search was conducted of the hotel room and a fully loaded Taurus revolver was found inside the air conditioning unit.[7] (Rec. Doc. No. 9). After the search, Gorman admitted to placing the

---

[2] Rec. Doc. No. 9 (citing St. Rec. Vol. 3 of 6, Bill of Information, 3/25/10 (as amended 10/7/10, 10/20/10)).
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

gun inside the air conditioning unit, and identified Michael Collier as the gunman in the Ovella robbery.[8] (Rec. Doc. No. 9).

Gorman had prior convictions for possession of cocaine and possession of cocaine with intent to distribute, both of which occurred within the ten-year period required by La. R.S. 14:95.1 which pertains to a felon in possession of a firearm.[9] The state trial court severed the matter and the defendants were tried separately.[10] Gorman was found guilty on both counts.[11]

Gorman's motion for a new trial was denied, and after waiver of legal delays, he was sentenced to serve consecutive sentences of 75 years in prison at hard labor on the armed robbery count, and 15 years in prison at hard labor on the felon in possession of a firearm count.[12] The same day, the State also filed a multiple offender bill as to the armed robbery count to which Gorman initially entered a plea of not guilty.[13] Later, Gorman withdrew

---

[8] *Id.*
[9] *Id.*
[10] Rec. Doc. No. 9 (citing St. Rec. Vol. 3 of 6, Motion Hearing Minutes, 9/22/10; Hearing Transcript, pp. 5-6, 9/22/10. The record does not reflect the disposition of Collier's charge, although Gorman alleges that he eventually entered a plea of guilty).
[11] Rec. Doc. No. 9 (citing St. Rec. Vol. 4 of 6, Trial minutes, 10/7/10; Trial Transcript, 10/7/10; Jury Verdict (count one), 10/7/10; Jury Verdict (count two, 10/7/10); St. Rec. Vol. 4 of 6, Trial Transcript (continued), 10/7/10).
[12] Rec. Doc. No. 9 (citing St. Rec. Vol. 3 of 6, Trial Court Order, 10/25/10; Motion for New Trial, 10/20/10; Sentencing Minutes, 10/25/10).
[13] Rec. Doc. No. 9 (citing St. Rec. Vol. 3 of 6, Multiple Bill, 10/25/10; Sentencing Minutes, 10/25/10; St. Rec. Vol. 4 of 6, Sentencing Transcript, 10/25/10).

the not guilty plea as to the multiple offender bill and entered a guilty plea.[14] The armed robbery count from the original sentence was vacated and Gorman was resentenced to serve 75 years on the multiple offender count to run consecutively with the felon in possession of a firearm count from the original sentence.

Following the conviction, Gorman's counsel argued to the Louisiana Fifth Circuit Court of Appeal that the state trial court erred by limiting defense counsel's cross-examination of Detective Carroll regarding his dismissal from the sheriff's office and drug charges pending against him.[15] Gorman further filed a pro se supplemental brief in which he argued that he was denied conflict-free counsel.[16] The state appellate court affirmed the conviction, finding no merit in either claim. (Rec. Doc. No. 9).

Gorman did not seek rehearing or further review. (Rec. Doc. No. 9). His conviction became final 30 days after the appellate court's ruling. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

---

[14] Rec. Doc. No. 9 (citing St. Rec. Vol. 3 of 6, Sentencing Minutes, 1/12/11; Please of Guilty & Waiver of Rights as a Multiple Offender, 1/12/11).
[15] Rec. Doc. No. 9 (citing St. Rec. Vol. 4 of 6, Appeal Brief, 11-KA-0491, 5/24/11).
[16] Rec. Doc. No. 9 (citing St. Rec. Vol. 4 of 6, Pro Se Supplemental Brief, 11-KA-0491, 7/15/11).

Gorman submitted to the state trial court an application for post-conviction relief asserting two claims of ineffective assistance of counsel: (1) a failure to object to reading of partial jury charges and (2) failure to investigate witnesses.[17] That court denied Gorman's application, finding the claims meritless under the *Strickland v. Washington* standard and related state case law. 466 U.S. 668, 684-85 (1984). The Louisiana Fifth Circuit denied Gorman's writ application, also agreeing that Gorman's representation satisfied the *Strickland* standard. *Id.* The Louisiana Supreme Court denied Gorman's related application without stated reasons.

Law and Analysis:

I. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) revised federal habeas corpus legislation, including 28 U.S.C. § 2254, which applies here. The AEDPA therefore applies to Gorman's petition. The threshold question under the statute is whether the petition is timely and whether the petitioner has exhausted state court remedies. Further, it must be determined whether "procedural default" applies to the claim. *Nobles v. Johnson*, 127 F.3d 409, 419-420 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As conceded by the State, Gorman's motion was timely

---
[17] Rec. Doc. No. 9 (citing St. Rec. Vol. 1 of 6, Application for Post-conviction Relief, 12/6/12 (dated 11/28/12); St. Rec. Vol. 2 of 6, Memorandum in Support, 12/6/12 (dated 11/28/12)).

filed, he has exhausted all available state court remedies, and is not in procedural default.

On the merits, the AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). Different standards exist for questions of fact, questions of law, and mixed questions of law and fact.

A state court's determination of a mixed question of law and fact is reviewed under §2254(d)(1) and receives deference, unless the state court's decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the Supreme Court. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

A state court's decision is "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams*, 529 U.S. at 405-06, 412-13. A state court's decision involves an "unreasonable application of federal law" if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08. When analyzing an unreasonable application of law to fact in this context, the Court

need not determine whether the state court's reasoning was sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). Furthermore, it is the petitioner's burden to show that the state court applied the law to the facts of his case in an "objectively unreasonable manner." *Price v. Vincent*, 538 U.S. 634, 641 (2003) (*citing Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

II. <u>Review of Magistrate's Report and Recommendation</u>

The Magistrate advised in his Report and Recommendation that this Court deny Gorman's application and dismiss it with prejudice. (Rec. Doc. No. 9). A district court reviewing a magistrate judge's report and recommendation may accept all sections of the report not objected to by either party, as long as those sections are not clearly erroneous. Fed. R. Civ. P. 72(b); *Gilkers v. Cain*, 2006 WL 1985969 (E.D. La. May 30, 2006). Here, Gorman objects to the Magistrate's Report and Recommendation concerning his claims of (1) failure to object to the reading of partial jury charges and (2) failure to investigate witnesses prior to trial (Rec. Doc. No. 10 and 11).

These claims concern ineffective assistance of counsel. (Rec. Doc. No. 10 and 11). Because objections were filed to that portion of the Magistrate's Report and Recommendation, the Court undertakes

7

an independent review of the facts and considers the matter de novo. Fed. R. Civ. P. 72(b).

   A.   Ineffective Assistance of Counsel

Gorman's claims of ineffective assistance of counsel allege that his counsel failed to (1) object to the state trial court's response to the jury's request for definitions during deliberations and (2) that his counsel did not adequately investigate in preparing for trial when she did not interview the victim and the co-defendant to determine if their testimony could be used to support his defense. (Rec. Doc. No. 10 and 11).

On post-conviction review, the state trial court found these claims conclusory and meritless under the *Strickland* standards and related state law. The Louisiana Fifth Circuit agreed with that decision, also citing *Strickland*, and the Louisiana Supreme Court denied relief without further comment. (Rec. Doc. No. 9).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler,* 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Accordingly, the question for this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law. The Supreme Court's holding in *Strickland* established a two-prong test for evaluating claims of ineffective assistance of counsel. These require the petitioner to prove (1) deficient performance and (2) prejudice therefrom. The

petitioner has the burden of proving this deficiency by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000). In ineffective assistance of counsel claims, this Court need not address both prongs of the *Strickland* standard, but may decide based solely on a claim's failure to meet either prong of the test. *Kimbler*, 167 F.3d 889, 893 (5th Cir. 1999).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. In order to prove prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Furthermore, the petitioner must affirmatively prove, and not just allege, prejudice. *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Scrutiny of counsel's performance under the AEDPA is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). This court must apply the "strong presumption" that trial counsel's tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 446 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

a. <u>Failure to Object to Reading of Partial Jury Charge</u>

Gorman argues that his trial counsel failed to object to the state trial court's partial reading of the original jury instructions in response to the jury's request for definitions during deliberations. The record reflects that during deliberations the jury sent the trial judge a "note that said definitions."[18] The trial judge confirmed with the foreperson that they wanted to hear "just the elements" of armed robbery, first degree robbery, and simple robbery.[19] The trial judge read these portions of the original jury instructions at that time.[20] The jury did not ask for any additional information at that time or anytime following.[21] Gorman's trial counsel did not object to the re-reading, and the trial court's jury instructions were not directly challenged on appeal or on post-conviction review. (Rec. Doc. No. 9). This issue was raised for the first time in Gorman's post-conviction ineffective assistance of counsel claim. *Id.*

Gorman complains that only the definitions mentioned above were re-read to the jury as opposed to all available verdicts, including attempted armed robbery, attempted first degree robbery and

---
[18] St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 119, 10/7/10.
[19] *Id.*
[20] *Id.*
[21] *Id.*

10

attempted simple robbery. (Rec. Doc. No. 10 and 11). He alleges that this emphasized the crimes that were read, and may have given the impression that the responsive verdicts relating to "attempted" offenses were not viable options to be discussed during jury deliberations. *Id.*

La. Code Crim. P. art. 802 requires a trial court to charge the jury as to applicable law to the case. *Steve Marlbrough*, __ So. 3d__, 2014 WL 970163, at *9 (La. App. 5 Cir. 03/12/14). Under Louisiana law, if the jury did not ask for all of the responsive verdicts, then it is unnecessary for the trial judge to re-read them all to the jury. 2014 WL 970163, at *9. The United States Supreme Court has also held that a judge is only constitutionally required to respond to the jury's question "by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry." *Waddington v. Sarausad*, 555 U.S. 179, 169-97 (2009) (quoting *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (to establish prejudice from an allegedly improper jury instruction, petitioner must prove that the charge "by itself so infected the entire trial that the resulting conviction violates due process.")

The trial judge in this case responded to the jury's question in accordance with Louisiana law. The jury was clear that they only wanted definitions of three specific crimes read to them at that time, and did not ask about the "attempted" crimes at any point.

11

The jury did ask one further question, but it pertained to the definition of principals to a crime that would apply to the charges as a whole in considering the overwhelming evidence of Gorman's guilt. "A mere 'slight possibility' that the jury misapplied the state trial court's instruction is not enough to establish a due process violation." *Waddington*, 555 U.S. at 191 (citing *Weeks*, 528 U.S. at 236 and *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). Here, the trial judge's response to the jurors' specific question was constitutionally sufficient.

Gorman's trial counsel had no basis to object to the charges read to the jury in response to the question that they asked. Thus, no error by the state trial court has been identified that would have warranted objection by his trial counsel. Therefore, Gorman has failed to identify any deficiency in counsel's performance or prejudice arising from the failure to enter an objection. *Clark*, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance").

The state courts' denial of relief on this issue was not contrary to, nor an unreasonable application of, *Strickland*. Gorman is not entitled to relief on this claim.

b. <u>Failure to Investigate Witnesses</u>

Gorman asserts that his trial counsel failed to interview the victim, Althea Ovella, and co-defendant, Michael Collier, before trial. (Rec. Doc. No. 10 and 11). He contends that his counsel

12

should have interviewed the two witnesses to determine if they could be used to support his defense that the intent was not to rob Ms. Ovella and that Gorman tried to stop Collier from conducting the robbery. *Id.*

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial." (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Druery v. Thaler*, 647 F. 3d 535, 541 (5th Cir. 2011). "A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown." *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007)(citing *Strickland*, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different"). (Rec. Doc. No. 9). To prevail on a failure to investigate claim, the petitioner would have to provide factual support as to what exculpatory evidence would have been revealed by further investigation. *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F. 3d 365, 375 (5th Cir. 2005).

Gorman has not identified any exculpatory evidence that would have been obtained from a pretrial interview of either witness. At no time did Ms. Ovella state that Gorman attempted to stop the robbery. Further, there is little evidence to suggest that

13

Collier's testimony would have significantly assisted his defense in any way. At the time of trial, Collier's charges were still pending. There was nothing in the record ahead of the trial or presently before this court to suggest that Collier would have testified at the risk of forfeiting his Fifth Amendment rights while his own charges were pending or that he would have testified favorably for Gorman at any point.

"Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise." *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) (Rec. Doc. No. 9). Trial counsel's decision not to conduct a pretrial interview with Collier or Ms. Ovella was well within the realm of reasonable attorney conduct and trial strategy.

Accordingly, and for the reasons pronounced above, **IT IS ORDERED** that the Magistrate's Report and Recommendation are **ADOPTED** and that Luhron A. Gorman's petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 18th day of September 2014.

UNITED STATES DISTRICT JUDGE

14